MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for plaintiff, Berkshire Life Insurance Company of America

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, | CIVIL ACTION NO. |
| Plaintiff, | |
| vs. | |
| STEPHEN DIPERI, | |
| Defendant. | |

## CIVIL ACTION - COMPLAINT

Berkshire Life Insurance Company of America ("Berkshire Life"), maintaining its principal place of business located at 700 South Street, Pittsfield, MA, by way of complaint against defendant, Stephen Diperi ("Diperi"), alleges and says:

### JURISDICTION

1. Berkshire Life is an insurance corporation of, and maintains its principal place of business in, the Commonwealth of Massachusetts, and is a citizen of the Commonwealth of Massachusetts within the meaning and intent of 28 U.S.C. §1332.

2. Diperi maintains a primary residence located at 46 Mansion Ridge, Monroe, New York 10950 and is a citizen of the State of New York within the meaning and intent of 28 U.S.C.

§1332.

3. The amount in controversy between the parties exceeds the sum of $75,000.00, exclusive of interest and costs of suit.

4. This court maintains original jurisdiction based upon diversity of citizenship of the within parties pursuant to 28 U.S.C. §1332.

5. This action has been properly venued in this judicial district pursuant to 28 U.S.C. §1391.

## FIRST COUNT

6. Berkshire Life is, and during all times relevant has been, in the business of underwriting policies of disability insurance and is authorized to transact the business of insurance in the State of New York.

7. On October 2, 2005, Diperi submitted an application seeking the issuance of a policy of disability income insurance, which application consists of Part I executed by Diperi on October 2, 2005, and a Part II, Representations to the Medical Examiner, executed by Diperi on May 31, 2005 (collectively referred to as "Application").

8. In executing the Application, Diperi knew that he was required to provide truthful, accurate and honest answers to the questions present on the Application.

9. In executing the Application, Diperi knew that Berkshire Life would rely upon the answers recorded on the Application in determining whether Diperi was insurable and qualified for the policy applied for.

10. In executing the Application seeking issuance of the policy of disability income insurance, Diperi knew that he may be subject to civil and/or criminal penalties in the event he

knowingly made a false statement in order to obtain the insurance policy.

11. In executing the Application, Part I, seeking the issuance of the policy of disability insurance, Diperi provided the following answers:

> 4(l) Are you currently receiving any medical advice or treatment for any medical, surgical or psychiatric condition? **NO**
>
> 5(g) In the last ten years, have you had, been treated for or received a consultation or counseling for...:
>
> * * *
>
> v. arthritis, rheumatism, or disorder of the joints, limbs or muscles? **NO**
>
> (h) Do you have any loss of hearing or sight, an amputation of any kind, or any physical deformity, impairment or handicap? **NO**
>
> * * *
>
> (j)(ii) Are you currently taking prescribed medication? **NO**
>
> * * *
>
> (n) Within the past five years, have you had a physical exam or check up of any kind? **NO**
>
> (o) Within the past five years, have you been advised to have surgery or any diagnostic tests that were not performed, except for HIV tests? **NO**
>
> * * *
>
> (q) Other than as previously stated on the application, in the last five years have you received medical advice from physicians, medical or mental health professionals, counselors, psychotherapists, or other practioners, and have you been a patient in a hospital, clinic, sanatorium, or other medical facility? **NO**

12. In the Application, Part I, questions 5(a) through (c) Diperi was required to identify the name and address of his personal physician, date and reason last consulted, what treatment or

3

medication was given or prescribed. In response to these questions Diperi represented "N/A."

13. The Application, Part I, required Diperi to provide all details to any "Yes" answer to include diagnosis and symptoms performed, dates, types and amounts of medication, length of disability, degree of recovery and names and addresses of all physicians, medical or other mental health professionals, psychotherapists, practioners or hospitals.

14. Having answered "No" to each of the foregoing questions, Diperi failed to provide any details in the remarks section of the Application.

15. Through and by virtue of the execution of the Application seeking issuance of the policy of disability income insurance, Diperi expressly represented, acknowledged and agreed:

> Those parties who sign below, agree that:
>
> 1. This Application, any required Representations to the Medical Examiner, and any other supplements to the application will form the basis for, and become part of and attached to, any policy issued.
>
> 2. All of the statements that are part of the application and any other supplements to the Application are correctly recorded, and are complete and true to the best of the knowledge and belief of those persons who made them.
>
> 3. No agent or broker or medical examiner has any right to accept risks, make or change contracts, or to waive or modify any of the Company's rights or requirements.
>
> 4. Any misrepresentation or omission, if found to be material, may adversely affect acceptance of the risk, claims payment or may lead to rescission of any policy that is issued based on this application.
>
> \* \* \*
>
> **Any person who knowingly, and with the intent to defraud any insurance company or other person, files an application of insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a**

4

> fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000.00 in the stayed value of the claim for each such violation.

16. During the underwriting of the Application seeking the issuance of the policy of disability income insurance, Diperi was interviewed on October 6, 2005, at which time Diperi reaffirmed the representations contained on the Application.

17. On the basis of the representations and statements contained in the Application, and in reliance upon Diperi's complete candor, honesty and openness in disclosing information in response to the questions present on the Application, Berkshire Life approved the issuance of a policy of disability income insurance bearing policy no. Z088400.

18. The policy of disability income insurance contains a date of issue of October 17, 2005, and provides a maximum monthly benefit of $6,000.00, following a three (3) month elimination period, with benefits payable for lifetime, subject to the terms and provisions contained in the policy of disability income insurance.

19. The policy of disability income insurance further contains a residual disability benefit, future increase option benefit in the amount of $8,000.00, together with a capital sum benefit in the amount of $7,200.00.

20. At the time of the issuance of the policy of disability income insurance, Diperi was 36 years of age, having been born December 31, 1968.

21. The policy of disability income insurance provides in the GENERAL CONTRACT PROVISIONS:

**CONSIDERATION**

We have issued this policy in consideration of the representations in

your application and payment of the first term premium. A copy of your application is attached and/or is a part of this policy.

\* \* \*

**Time Limit on Certain Defenses**

After two years of the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of the two-year period....

22.  On June 20, 2007, Diperi called Berkshire to provide notice of a potential claim and in so doing Diperi reported that he had been working at a reduced rate since he tore ligaments in his ankle while walking on a golf course in June 2005.

23.  Following receipt of Diperi's notice of a potential claim and during an evaluation thereof, Berkshire Life discovered, for the first time, that the statements and representations made by Diperi in response to the questions present on the Application were knowingly and materially false, that Diperi knowingly and intentionally failed and omitted to disclose material facts, and otherwise knowingly and intentionally failed to accurately, honestly and/or truthfully disclose material information in response to the questions present on the Application which, if disclosed, would have caused the non-issuance of the policy of disability insurance by Berkshire Life.

24.  Specifically, and by way of illustration only, Berkshire Life confirmed during its evaluation of the notice of claim and a review of Diperi's medical records that in fact on June 5, 2005, Diperi fell in a ditch while playing golf and injured his ankle. When the pain did not subside or improve, Diperi presented to an orthopedic surgeon Dr. Zbolinski who described Diperi as complaining of pain and manifesting an antalgic gaist, left ankle edema and tenderness over the anterior ligament. Dr. Zbolinski obtained X-rays of Diperi's ankle which proved to be negative. Dr.

Zbolinski prescribed a cam walker, rest, ice and elevation and an MRI. On June 14, 2005, Diperi presented at Lenox Hill Hospital for an MRI of his left ankle which was obtained and which revealed a completely torn anterior talofiber ligament. Medical records obtained by Berkshire Life further revealed several additional visits by Diperi to Dr. Zbolinski in July 2005 and August 2005. In addition, treatment records obtained by Berkshire Life from St. Anthony's Community Hospital Center for Physical Therapy reflect that Diperi received seventeen (17) physical therapy consultations between July 22, 2005 and October 11, 2005.

25. Based upon the discovery of material misrepresentations and omissions in the Application, Berkshire Life rescinded the Policy and declared it null and void effective on the date of its issue on October 17, 2005, by letter to Diperi dated October 12, 2007. In addition, Berkshire Life tendered a full refund of all premiums paid by Diperi, plus interest in the amount of $5,949.18.

26. Berkshire Life has no adequate remedy at law and therefore seeks that the policy of disability insurance bearing policy no. Z0858400 be declared null and void and rescinded, *ab initio*.

**WHEREFORE** Berkshire Life demands judgment against Diperi for relief more particularly described as follows:

(a) an order declaring and adjudging the policy of disability income insurance bearing policy no. Z0858400 issued to Diperi to be null and void and rescinded, *ab initio*; and

(b) an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as this Court deems equitable and just.

## SECOND COUNT

27. Berkshire Life repeats and realleges each allegation contained in paragraphs 1 through

26, inclusive, as if the same were fully set forth at length herein.

28. Diperi knowingly, negligently, and/or innocently made material misstatements of fact; failed to disclose material facts in responsive to the questions present on the Application; and otherwise failed, refused and/or omitted to disclosed material facts all of which as aforesaid.

29. Berkshire Life has no adequate remedy at law and therefore seeks the policy of disability income insurance bearing policy no. Z0858400 be declared null and void and rescinded, *ab initio*;

**WHEREFORE** Berkshire Life demands judgment against Diperi for relief more particularly described as follows:

(a) an order declaring and adjudging the policy of disability income insurance bearing policy no. Z0858400 issued to Diperi to be null and void and rescinded, *ab initio*; and

(b) an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as this Court deems equitable and just.

### THIRD COUNT

30. Berkshire Life repeats and realleges each allegation contained in paragraphs 1 through 29, inclusive, as if the same were fully set forth at length herein.

31. Berkshire Life issued the policy of disability income insurance bearing policy no. Z0858400 pursuant to, and in accordance with, a mistake of fact all of which is aforesaid.

32. Berkshire Life has no adequate remedy at law and therefore seeks the policy of disability income insurance bearing policy no. Z0858400 be declared null and void and rescinded, *ab initio*;

**WHEREFORE** Berkshire Life demands judgment against Diperi for relief more particularly

described as follows:

(a)  an order declaring and adjudging the policy of disability income insurance bearing policy no. Z0858400 issued to Diperi to be null and void and rescinded, *ab initio*; and

(b)  an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as this Court deems equitable and just.

McElroy, Deutsch, Mulvaney & Carpenter, LLP

Attorneys for Plaintiff,
Berkshire Life Insurance Company of America

By: _____
Steven P. Del Mauro

Date: October 15, 2007
1005247_1.doc